| | |
|---|---|
| LAURA BRYANT, | Case No. EDCV 18-0422-AS |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner Of Social Security, | |
| Defendant. | |

**PROCEEDINGS**

On March 1, 2018, Plaintiff filed a Complaint seeking review of the Commissioner's denial of Plaintiff's applications for a period of disability and disability insurance benefits ("DIB"), and supplemental security income ("SSI"), respectively, under Titles II and XVI of the Social Security Act. (Dkt. No. 1). On August 8, 2018, Defendant filed an Answer and the Administrative Record ("AR"). (Dkt. Nos. 14-15). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 12, 17-18). On November 6, 2018, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions regarding Plaintiff's claim. (Dkt. No. 16). The Court has taken this matter under submission without oral argument. See C.D. Cal. C. R. 7-15.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

On December 29, 2013, Plaintiff, formerly employed as a caregiver and a legal secretary (see AR 42-45, 223, 264), filed an application for DIB alleging a disability onset date of June 11, 2008. (AR 173). On June 17, 2014, Plaintiff filed an application for SSI alleging the same onset date. (AR 177). Plaintiff's applications were denied initially on April 14, 2014 (AR 106-09), and on reconsideration on September 25, 2014. (AR 113-18).

On August 26, 2016, Administrative Law Judge Mason D. Harrell, Jr. ("ALJ") heard testimony from Plaintiff, who was represented by counsel, and vocational expert ("VE") Troy Scott. (See AR 39-62). On September 21, 2016, the ALJ issued a decision denying Plaintiff's applications. (See AR 22-34).

The ALJ applied the requisite five-step process to evaluate Plaintiff's case. At step one, the ALJ found that Plaintiff met the insured status requirements through December 31, 2012, and had not been engaged in substantial gainful activity since her alleged disability onset date of June 11, 2008. (AR 24).

At step two, the ALJ found that Plaintiff's degenerative disc disease of the spine was a severe impairment but Plaintiff's impairments of depression and history of alcohol abuse were not severe. (AR 24-27).

At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a listing found in 20 C.F.R Part 404, Subpart P, Appendix 1. (AR 27). Next, the ALJ found that Plaintiff had the following Residual Functional Capacity ("RFC")[1]:

_____

[1] A Residual Functional Capacity is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R §§ 404.1545(a)(1), 416.945(a)(1).

[Plaintiff can] perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a):[2] she can lift 10 pounds frequently and occasionally. Except, she can occasionally use a cane to walk. [Plaintiff] can frequently push or pull. She can stand and walk for two hours out of an eight-hour workday at 10-minutes at a time. [Plaintiff] can sit for six hours out of an eight-hour workday at 30 minutes at a time. She can stand and stretch for up to a minute before sitting down again. She can occasionally climb, balance, kneel, crawl, and walk on uneven terrain. [Plaintiff] can never climb ladders, ropes, or scaffolds. She can never work at unprotected heights.

(AR 28).

At step four, the ALJ determined, based on the VE's testimony, that Plaintiff is capable of performing her past relevant work as a legal secretary as actually and generally performed. (AR 32-33). The ALJ then proceeded to make an alternative finding, at step five, that Plaintiff can also perform other work existing in substantial numbers in the national economy – specifically, as a telemarketer. (AR 33-34). The ALJ thus determined that Plaintiff is not disabled. (AR 34).

On January 9, 2018, the Appeals Council denied Plaintiff's request to review the ALJ's decision. (See AR 1-6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. See 42 U.S.C. §§ 405(g), 1383(c).

---

[2] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

**STANDARD OF REVIEW**

This Court reviews the Administration's decision to determine if it is free of legal error and supported by substantial evidence. See Brewes v. Comm'r, 682 F.3d 1157, 1161 (9th Cir. 2012). "Substantial evidence" is more than a mere scintilla, but less than a preponderance. Garrison v. Colvin, 759 F.3d 995, 1009 (9th Cir. 2014). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation omitted). As a result, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [a court] may not substitute [its] judgment for that of the ALJ." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**PLAINTIFF'S CONTENTIONS**

Plaintiff claims that (1) the ALJ failed to properly assess the medical opinions in the record; (2) the ALJ failed to properly consider her subjective testimony; and (3) the ALJ's findings at steps four and five are not supported by substantial evidence. (See Joint Stip. at 4-29).

**DISCUSSION**

After consideration of the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.[3]

**A.    The ALJ Did Not Err in Assessing the Medical Opinions**

Plaintiff claims that the ALJ erred in assessing the opinions of multiple medical opinions in the record, including Plaintiff's treating physician, Dr. Ikechi Obiocha, M.D.; consultative examiners Dr. Ulin Sargeant, M.D., and Dr. Earbin Stanciell, M.D.; and state agency consultative reviewers Dr. G. Johnson, M.D., and Dr. H. Han, M.D. (See Joint Stip. at 4-7, 13-15).

**1.    Applicable Law**

Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physics opinion carries

_____

[3] The harmless error rule applies to the review of administrative decisions regarding disability. See McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

more weight than a reviewing physician's." <u>Holohan v. Massanari</u>, 246 F.3d 1195, 1202 (9th Cir. 2001); <u>see</u> <u>also</u> <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995).  The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record.  20 C.F.R. § 416.927(c)(2); <u>see</u> <u>Trevizo v. Berryhill</u>, 871 F.3d 664 (9th Cir. 2017).  When a treating physician's opinion is not controlling, it is weighted based on factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record as a whole, and specialization of the physician.  20 C.F.R. § 416.927(c)(2)-(6).

If a treating or examining doctor's opinion is contradicted by another doctor, the ALJ must provide "specific and legitimate reasons" for rejecting the opinion.  <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007); <u>Lester v. Chater</u>, 81 F.3d at 830-31.  However, if a treating or examining doctor's opinion is not contradicted by another doctor, the ALJ can reject the opinion only for "clear and convincing reasons." <u>Carmickle v.</u> <u>Commissioner</u>, 533 F.3d 1155, 1164 (9th Cir. 2008); <u>Lester</u>, 81 F.3d at 830-31.

**2.  Dr. Obiocha**

Plaintiff contends that the ALJ erred by failing to properly discuss and weigh the records of treating physician Dr. Obiocha, (<u>see</u> Joint Stip. at 4-5, 13-15), noting that Dr. Obiocha treated

her for a variety of conditions other than her lower back, including hip deformity, bilateral hand numbness, thumb pain, anxiety, leg cramps, shoulder pain, chronic pelvic pain, and chronic pain syndrome. (Id. at 4 (citing AR 367)). Plaintiff points out that Dr. Obiocha's objective findings include tenderness in the hip and arthralgia in her fingers. (Id. (citing AR 376, 388)). Despite such evidence, Plaintiff contends, the ALJ never referenced Dr. Obiocha by name, and considered Dr. Obiocha's records only "in passing, and without reference to any hip or hand impairments." (Id. at 4-5). Plaintiff asserts that the ALJ merely included "a few pinpoint cites from Exhibit 9F, a portion of Dr. Obiocha's records (without referring to the provider by name)," but "did not reference Exhibit 5F, the underlying records from Dr. Obiocha." (Id. at 14). According to Plaintiff, "[t]hese records are significant, as they are SOAP notes and document Ms. Bryant's reports of pain." [4] (Id.).

Plaintiff fails to point to any "opinion" by Dr. Obiocha that the ALJ failed to address regarding Plaintiff's physical or mental limitations. The record contains Dr. Obiocha's treatment notes but does not include any overall assessment by the treating physician. However, to the extent that Dr. Obiocha's treatment

---

[4] The "SOAP" – subjective, objective assessment and plan – format is a way of organizing physician progress notes. See https://www.healthcareitnews.com/rethinking-progress-note.

notes constitute "opinion" evidence,[5] any error to specifically assess such evidence is harmless.

The ALJ considered all the medical evidence and opinions in the record, and sufficiently discussed Dr. Obiocha's treatment notes, finding that they did not support greater restrictions that the RFC determination. The ALJ noted, for example, that Dr. Obiocha's records reflect generally benign, normal findings, (AR 30 (citing AR 376-77, 381-82, 387-88, 416-17, 444)), and that Plaintiff had received conservative treatment, mainly involving refills of pain medications.[6] (AR 30 (citing AR 442, 445)). Substantial evidence in the record supports this finding, as Plaintiff typically saw Dr. Obiocha for routine medical visits and medication refills. (See, e.g., AR 373, 379, 385, 391, 420, 425, 431, 447, 457, 471).

---

[5] The notes may be considered "opinions" insofar as they "reflect judgments about the nature and severity of [Plaintiff's] impairment(s), including [her] symptoms, diagnosis and prognosis." 20 C.F.R. § 404.1527; see also Marsh v. Colvin, 792 F.3d 1170, 1173 n.1 (9th Cir. 2015) (quoting 20 C.F.R. § 404.1527) ("Dr. Betat's SOAP notes are 'medical opinion,' because they contain 'statements from [Dr. Betat] that reflect judgments about the nature and severity of [Marsh's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite her impairment(s), and [her] physical or mental restrictions.'" (quoting 20 C.F.R. § 404.1527)).

[6] Plaintiff testified that aside from medications, her physician gave her an epidural steroid injection in her back once, about a month before the hearing, and she was due for another the following week. (AR 53). She also stated that a surgeon had recently recommended back and hip surgery, but none had been scheduled. (AR 53-54).

Although Dr. Obiocha treated Plaintiff for a variety of conditions other than back pain, such as hand numbness and hip and shoulder pain, none of these conditions warrant greater restrictions than the ALJ's RFC determination. For example, diagnostic imaging studies of Plaintiff's lumbar spine, left shoulder, pelvis, and hands generally showed, at most, "mild" degenerative changes throughout the relevant period. (See, e.g., AR 287, 288, 299, 300, 312, 317-18, 330, 343, 486-87, 495-96, 498). The ALJ acknowledged Plaintiff's complaints of shoulder pain, which began after a fall in December 2013 and initially caused reduced range of motion. (AR 29-30; see AR 286, 358). An x-ray of the left shoulder on February 6, 2014 showed mild degenerative change but no fracture. (AR 312). As the ALJ noted, when Dr. Sargeant examined Plaintiff on August 23, 2014, he found that Plaintiff's shoulder pain "comes and goes." (AR 30; see AR 361). The ALJ also remarked that an orthopedic evaluation on May 27, 2014 "revealed negative Hawkins-Kennedy test and Neer sign," and Plaintiff "did not demonstrate weakness of the rotator cuff strength." (AR 31; see AR 501). Plaintiff testified at the hearing on August 26, 2016 that the problem with her hips began "[a]bout a year ago, two years ago," and was "just gradually getting worse." (AR 53). However, as the ALJ pointed out in the decision, Plaintiff exhibited normal range of motion in the hips when Dr. Sargeant examined her in August 2014, and she had normal gait and station upon examination in January 2016. (AR 29-30; see AR 361, 505). Plaintiff also fails to point to any record evidence showing that any hand-related impairment caused functional limitations. To the contrary, Dr. Sargeant

found that Plaintiff demonstrated normal joint flexion, "very good dexterity," and good grip strength in both hands, concluding that Plaintiff had "no limitations for fingering, handling, feeling, and reaching." (AR 361-62).

The ALJ's finding that Plaintiff did not have other severe impairments and did not warrant additional functional limitations is supported by substantial evidence. Accordingly, Plaintiff has failed to establish any material error in the ALJ's failure to further address Dr. Ochioba's treatment notes.

### 3.   Dr. Sargeant

Plaintiff contends that the ALJ erred by failing to adopt Dr. Sargeant's finding that Plaintiff required a walker for long distances. (Joint Stip. at 5).   Dr. Sargeant provided a consultative examination of Plaintiff on August 23, 2014. (AR 358-62).   He opined, among other things, that Plaintiff can stand and walk for two hours and sit for six hours in an eight hour workday, but she "needs a cane for short distances and a walker for long distances." (AR 362).   Dr. Sargeant also found that Plaintiff can occasionally climb, balance, kneel, crawl, walk on uneven terrain, climb ladders, and work at heights. (AR 362).

The ALJ gave "some weight" to Dr. Sargeant's opinion, viewing it "favorably" to the extent that it was consistent with the RFC. (AR 31).   However, the ALJ found that the opinion's value was diminished because Dr. Sargeant "did not have the

benefit of reviewing the full breadth of the medical record," such as August 2008 examinations showing "normal extremities, with full range of motion." (AR 31 (citing AR 283)). The ALJ also noted that Plaintiff "even admitted at the hearing that she uses the cane two to three times per week."[7] (AR 31; see AR 46). Plaintiff also stated that she does not use a walker (AR 46), and that she can stand for about ten minutes at a time and sit for twenty or thirty minutes before "it starts to get uncomfortable." (AR 55).

The ALJ essentially adopted the standing and sitting restrictions from Dr. Sargeant's opinion and Plaintiff's testimony in his RFC determination, finding that Plaintiff "can stand and walk for two hours out of an eight-hour workday at 10-minutes at a time" and "can sit for six hours out of an eight-hour workday at 30 minutes at a time" and that Plaintiff "can occasionally use a cane to walk." (AR 28). Although the ALJ did not specifically adopt Dr. Sargeant's opinion that Plaintiff needs to use a walker "for long distances," the RFC makes such a restriction unnecessary by limiting Plaintiff to only ten-minute intervals of standing and walking. (AR 28, 362). Because the RFC finding essentially accommodates Dr. Sargeant's opinion, and the ALJ provided sufficient basis to reject it to the limited extent that he did so, there is no error.

---

[7] Specifically, Plaintiff testified that she had been using the cane for "[a]bout a year," and used it "just like two or three times a week, four times a week." (AR 46).

### 4. Dr. Han

Plaintiff claims that the ALJ erred by failing to credit the opinion of state agency consultant, Dr. Han, which limited Plaintiff to only occasional overhead reaching with the upper left extremity. (Joint Stip. at 6-7; see AR 100). Plaintiff points out that she had been receiving treatment for shoulder pain from Dr. Obiocha and the Arrowhead Regional Medical Center. (Joint Stip. at 7). However, the ALJ explicitly recognized Dr. Han's opinion regarding overhead reaching and appropriately rejected this restriction based on its inconsistency with the objective medical evidence in the record. Specifically, the ALJ pointed out that "an orthopedic evaluation revealed negative Hawkins-Kennedy test and Neer sign," and Plaintiff "did not demonstrate weakness of the rotator cuff strength." (AR 31; see AR 501). Therefore, the ALJ did not err regarding Dr. Han's assessment.

### 5. Dr. Stanciell and Dr. Johnson

Plaintiff contends that the ALJ erred in finding no severe mental limitations, and particularly by giving great weight to consultative examiner Dr. Stanciell's opinion and little weight to the opinion of state agency psychological consultant, Dr. Johnson. (Joint Stip. at 5-6).

Dr. Stanciell provided a psychiatric evaluation of Plaintiff on August 21, 2014. (AR 351-55). He observed that Plaintiff had a depressed mood and affect, but otherwise was engaged, alert,

well oriented, and cooperative, with good eye contact and normal speech and thought process. (AR 353). He also observed that Plaintiff had no difficulty interacting with the doctor or the staff during her visit. (AR 354). Plaintiff, moreover, was able to "do serial sevens and serial threes," to spell the word "world" forward and backward, and "to register 3 out of 3 items at 0 minutes and 3 out of 3 items at 5 minutes." (AR 353). Plaintiff also had common sense understandings and "responded appropriately to imaginary situations requiring social judgments and knowledge of the norms." (AR 353). Dr. Stanciell found that Plaintiff has no difficulties maintaining social functioning and "mild difficulties" in maintaining composure and even temperament, and in concentration, persistence, and pace. (AR 354). He opined that Plaintiff would have no limitations in performing simple and repetitive tasks, and otherwise would have only mild mental limitations. (AR 354). In assigning great weight to Dr. Stanciell's opinion, the ALJ noted that Dr. Stanciell was a board-certified psychiatrist who based his opinion on "a face-to-face interview and a supportive mental examination." (AR 26-27).

Dr. Johnson provided a consultative *review* of Plaintiff's records on September 11, 2014. (AR 97-98, 101-03). He found that Plaintiff has moderate limitations in her ability to perform detailed instructions, maintain attention and concentration, maintain punctuality and regular attendance, sustain an ordinary routine without supervision, and respond to changes in the work setting, among other abilities. (AR 101-02). Dr. Johnson based

these assessments on the fact that Plaintiff was depressed and withdrawn. (AR 101-02). The ALJ gave little weight to Dr. Johnson's opinion because it "overstate[d]" Plaintiff's mental limitations and conflicted with the medical record, which "showed generally appropriate behavior." (AR 27; <u>see</u> AR 45-47). The ALJ noted, for example, that Plaintiff has normal insight and judgment and an adequate fund of knowledge about current events, and she follows directions well. (AR 27; <u>see</u> AR 283, 505).

Plaintiff contends that the ALJ erred by giving less weight to Dr. Johnson's opinion than Dr. Stanciell because Dr. Johnson's opinion "was more consistent with the medical evidence," suggesting that Dr. Johnson "may have had more evidence before him" than Dr. Stanciell. (Joint Stip. at 6). Plaintiff asserts that "[w]e have no way of gauging what evidence the consultative examiner had" because Dr. Stanciell "simply refers to having reviewed "all" medical records." (<u>Id.</u>; <u>see</u> AR 351). Aside from mere conjecture, however, Plaintiff offers no basis to find that Dr. Stanciell reviewed less evidence when examining Plaintiff on August 21, 2014, than the record reviewed by Dr. Johnson when providing his non-examining opinion a few weeks later, on September 11, 2014. (<u>See</u> AR 97-98, 101-03, 351-55). The record does not reflect that any pertinent evidence was developed between these two dates and Plaintiff did not receive any regular mental health treatment other than Xanax prescribed by her primary physician. (AR 49). Notwithstanding Plaintiff's contentions, there is substantial evidence in the record to support the ALJ's decision to give greater weight to Dr.

Stanciell's examining opinion over Dr. Johnson's non-examining opinion.

Plaintiff also contends that the ALJ should have found that Plaintiff had a severe mental impairment in part because Dr. Stanciell assigned Plaintiff a GAF of 58, diagnosed her with depression, and recommended treatment.[8] (Joint Stip. at 5; <u>see</u> AR 353-54). Regardless of these factors, Dr. Stanciell's findings of, at most, only mild mental limitations supports the ALJ's determination that Plaintiff does not have severe limitations in mental functioning and does not require greater limitations in her RFC. Plaintiff has failed to establish any error in the ALJ's determination to exclude mental restrictions from the RFC

[8] As the ALJ explained, "a GAF score is a clinician's rating of an individual's overall psychological, social, and occupational functioning," and a score between 51 and 60 "indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning." (AR 27 & n.1). The ALJ explained that he considered the GAF scores but gave them little weight because they represent just "a snapshot of an individual's level of functioning at a particular point in time." (AR 27).

**B.  The ALJ Did Not Err in Assessing Plaintiff's Subjective Complaints**

Plaintiff contends that the ALJ failed to provide clear and convincing reasons to discount her allegations.  (Joint Stip. at 15-16).  Plaintiff reported, among other things, that she "can't do much of anything," including "walking, shopping, hiking, driving, and bike riding."  (AR 194).  She also reported that she "can't bend over to pick things up," and needs assistance getting dressed, cooking, cleaning, and "getting around."  (AR 193, 195).  She noted, moreover, that she has limitations in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair-climbing, memory, completing tasks, concentration, understanding, and following instructions.  (AR 211).  In addition, she testified that she can stand or walk for ten minutes at a time, sit for twenty to thirty minutes, and lift five or ten pounds.  (AR 55-56).

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis.  Trevizo v. Berryhill, 874 F.3d 664, 678 (9th Cir. 2017).  First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged.  Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).  "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  Id. (emphasis in original) (citation omitted).  "Nor must a

claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." <u>Id.</u> (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity. <u>Trevizo</u>, 874 F.3d at 678 (citation omitted); <u>see also</u> <u>Smolen</u>, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 883 (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering based on affirmative evidence thereof, he or she may only find an applicant not credible by making specific findings as to credibility and stating clear and convincing reasons for each."). "This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases." <u>Garrison</u>, 759 F.3d at 1015 (citation omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider the following:

> (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.

Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

Further, the ALJ must make a credibility determination with findings that are "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) ("A finding that a claimant's testimony is not credible must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.") (citation omitted). Although an ALJ's interpretation of a claimant's testimony may not be the only reasonable one, if it is supported by substantial evidence, "it is not [the court's] role

to second-guess it." <u>Rollins v. Massanari</u>, 261 F.3d 853, 857
(9th Cir. 2001).

Here, the ALJ found that Plaintiff's "medically determinable
impairments could reasonably be expected to cause the alleged
symptoms," but her "statements concerning the intensity,
persistence and limiting effects of these symptoms are not
entirely consistent with the medical evidence and other evidence
in the record for the reasons explained in th[e] decision." (AR
32). To support this finding, the ALJ pointed to the "generally
mild" diagnostic evidence and Plaintiff's daily activities,
including the part-time work she performs as a caregiver. (AR
32). These findings constitute specific, clear, and convincing
reasons to support the ALJ's credibility finding.

Substantial evidence supports the ALJ's finding that the
severity of Plaintiff's allegations is not fully supported by the
objective medical evidence. (AR 32). While inconsistencies with
the objective medical evidence cannot be the <u>sole</u> ground for
rejecting a claimant's subjective testimony, it is a factor that
the ALJ may consider when evaluating credibility. <u>Bray</u>, 554 F.3d
at 1227; <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005);
<u>Rollins</u>, 261 F.3d at 857; <u>see</u> SSR 16-3p, at *5 ("objective
medical evidence is a useful indicator to help make reasonable
conclusions about the intensity and persistence of symptoms,
including the effects those symptoms may have on the ability to
perform work-related activities"); <u>Carmickle</u>, 533 F.3d at 1161
("Contradiction with the medical record is a sufficient basis for

rejecting the claimant's subjective testimony."). Here, the ALJ correctly noted that the results of diagnostic studies were generally mild. (See AR 287, 302, 317-18, 330, 347). Imaging studies of the lumbar spine from 2013 and 2014, for example, revealed "mild intervertebral disk space narrowing" and "degenerative disc disease at L5-S1," but "otherwise unremarkable lumbosacral spine." (AR 287, 330). Similarly, Plaintiff's 2013 and 2014 imaging studies of the left shoulder showed "unremarkable alignment" and "mild" degenerative changes. (AR 288, 317-18, 347).

Substantial evidence also supports the ALJ's finding that Plaintiff's daily activities and caregiver work belied the severity of her allegations. (AR 32). Plaintiff's ability to perform various everyday activities is a legitimate basis to discount Plaintiff's credibility. See Burch, 400 F.3d at 680-81 (claimant's allegations of disability properly discredited where claimant was able to care for her own personal needs, cook, clean, shop, interact with her boyfriend, and manage finances). Plaintiff contends that her work as a caregiver[9] was an improper basis to discredit her testimony because "her job duties were

_____

[9] Plaintiff testified that she works as a caregiver for 134 hours a month, and the gentleman she cares for is a friend who lives in her house. (AR 42, 48, 50). When asked if she believed she could do this work full time, Plaintiff initially replied that she could not because "[t]hey won't allow it." (AR 49). Only when her counsel pressed further by asking whether she had physical limitations that would prevent her from doing the work full time did she follow up by explaining: "It's just hard to bend over, pick up, get comfortable, not steady on my feet, and just in pain a lot, just tired." (AR 49).

basically making sure her client takes his medication and she watches over him." (Joint Stip. at 16 (citing AR 42)). Contrary to this statement, however, Plaintiff testified that she also drives the client to the doctor, cooks his meals, and washes his clothes. (AR 47-48). Moreover, she reported that she feeds and bathes him. (AR 267). Aside from this work, she reported that she loads the dishwasher and does "light cleaning." (AR 208). She also testified that she drove to the hearing, but this was the farthest she had driven, and usually her driving involves just going "to the grocery store and back home." (AR 50). She shops at the grocery store once a month. (AR 209). Although Plaintiff's activities and caregiver tasks may not necessarily show that she was unimpaired, the ALJ reasonably found them inconsistent with the level of impairment that Plaintiff alleged. See Molina v. Astrue, 674 F.3d 1104, 1113 (9th Cir. 2012)_("Even where [claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

Accordingly, the ALJ properly discounted Plaintiff's credibility by giving specific, legitimate reasons that are supported by substantial evidence in the record.

//
//
//

## C. The ALJ Did Not Err in Concluding, at Step Four, that Plaintiff Is Not Disabled

Plaintiff claims that the ALJ erred in finding Plaintiff not disabled, both in his step four finding and the alternative step five finding. (Joint Stip. at 23-25, 28-29). At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a legal secretary. (AR 32-33). In making this finding, the ALJ relied on the VE's testimony that a person with Plaintiff's limitations would be able to perform this work. (AR 32-34, 57-59). Plaintiff asserts that the VE's testimony was "faulty" because "there was no discussion of vocational adjustment." (Joint Stip. at 24). As support, Plaintiff quotes SSR 96-9p:

> Under the regulations, "sedentary work" represents a significantly restricted range of work. Individuals who are limited to no more than sedentary work by their medical impairments have very serious functional limitations. For the majority of individuals who are age 50 or older and who are limited to the full range of sedentary work by their medical impairments, the rules and guidelines in appendix 2 require a conclusion of "disabled."

(Joint Stip. at 24 (quoting SSR 96-9p)). Plaintiff further claims that the ALJ erred at step four because the ALJ failed to include additional functional limitations to account for Plaintiff's shoulder impairment and mental impairment. (Id. at 28).

Contrary to Plaintiff's argument, there is no requirement for the ALJ to consider vocational adjustment at step four. The administrative ruling Plaintiff relies on, SSR 96-9p, applies only to step five of the sequential evaluation, where the ALJ,

after finding that a claimant cannot perform any past relevant work, determines whether the claimant instead "can make an adjustment to other work." 20 C.F.R. § 404.1520(g), 416.920(g). The stated purpose of SSR 96-9p is "[t]o explain the Social Security Administration's policies regarding the impact of [an RFC] assessment for less than a full range of sedentary work on an individual's ability <u>to do other work</u>." SSR 96-9p (emphasis added).

Thus, the ALJ did not err by failing to consider vocational adjustment at step four. Furthermore, for the reasons discussed above, Plaintiff has failed to demonstrate any error in the ALJ's RFC finding, which mirrors the hypothetical limitations presented to the VE at step four. (AR 28, 58). Accordingly, the ALJ properly relied on the VE's testimony to conclude, at step four, that Plaintiff can perform her past relevant work as a legal secretary, and is therefore not disabled. (AR 32-34). Because the ALJ properly found Plaintiff not disabled at step four, the Court need not address Plaintiff's contentions regarding the ALJ's alternative finding at step five.

//
//
//

**CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: November 30, 2018

                                    _____/s/_____
                                         ALKA SAGAR
                              UNITED STATES MAGISTRATE JUDGE